## Case No. 8,140.

### LAWRENCE v. NEW BEDFORD COMMERCIAL INS. CO.

[2 Story, 471; 10 Hunt, Mer. Mag. 79.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1843.

SHIPPING—SHIP TOTAL LOSS — RIGHT OF MASTER TO SELL—PROCEEDS REINVESTED —SANCTION OF MASTER'S ACTS—MASTER'S RIGHT TO COMPENSATION.

1. Where a ship is abandoned for a total loss, the master cannot sell the cargo, and invest the proceeds in other goods, unless he be justified by necessity, or by a high degree of expediency.
[Cited in The Lucinda Snow, Case No. 8,591.]

2. But if he do make such a sale and investment, when they are unnecessary or inexpedient, yet, if the parties interested receive the property, without objection, and adopt the acts of the master, they must bear all proper charges thereupon.

3. If, however, they receive the property, reserving their rights and waiving no objections, and it do not yield a profit beyond the fair value of the property shipped, they are liable for no charges upon it; but if it do yield such a profit, and the master act without fraud, he is entitled to be paid a reasonable compensation and his reasonable expenses, not exceeding such profit.

Assumpsit on a policy of insurance. A verdict being found for the plaintiff, in this case, it was, pursuant to the agreement of the parties, referred to auditors, to ascertain the amount of the loss for which the underwriters were liable, deducting the salvage. In order to understand the case, it is proper to state, that the ship Boston, after the surveys made at the Bay of Islands, in New Zealand, was condemned, because the necessary repairs would amount to more than the

ship would be worth after she was repaired. She was accordingly sold at the Bay of Islands by Hempstead, the master. The master remained there for four months, to take care of the property, as was his duty, and sold part of the cargo of oil there, and shipped the remainder of the cargo on board of the ship Henry Tuke, bound to New York, via Rio Janeiro. By the bill of lading, the shipment was for New London, with the privilege to discharge the same at Rio. The master embarked with the cargo on board the Henry Tuke, which duly arrived at Rio; he there caused the oil to be unladen and sold, and the proceeds invested in coffee, which was laden on board the Henry Tuke and carried to New York, and there sold with the consent of the underwriters. The master came with the shipment in the ship to New York. The coffee sustained some damage during the voyage. The report of the auditors having been returned to the court, objections were taken to certain allowances made to the master, which will fully appear in the argument of the counsel for the defendants.

Messrs. Colby and Coffin, for defendants, argued as follows:

In this case, it appears that the master of the Boston shipped the oil on board the ship Henry Tuke for New York; that the master came as passenger; that the ship touched at Rio Janeiro, where the master of the Boston landed a portion of the oil, invested the proceeds in coffee, which he shipped on board the said Henry Tuke; that the coffee was damaged on the passage, was finally landed at New York, and sold. On this state of facts, the underwriters have been charged, in the adjustment, with the following items, viz.:

| | |
|---|---|
| Passage of Capt. Hempstead in Henry Tuke to New York.................. | $150 |
| Expense and board paid at Rio Janeiro while unloading oil and loading coffee.. | 190 |
| Capt. Hempstead's board and services, 17–348 ............................ | 365 |

Sale of oil at Rio Janeiro.
Invoice as invested in coffee.
Net proceeds of coffee, &c.
Freight of oil, 10 cents per gal. 5 per cent. primage.
Duties.
Conference and Trapiche.
Brokerage, ½ per cent.
Gauging.
Commissions, 5 per cent.
Cost of 946 bags coffee invested as per invoice.
Commissions, Joseph Lawrence, 2½ per cent.
Survey.
Survey on damaged coffee.
Premium on policy of insurance on oil from Bay of Islands.
Benj. Hempstead, for services at Rio, disposing of oil and buying coffee.

These items are arranged under different heads, in the adjustment, but they are presented in this order for the purpose of presenting our objection. We do not suppose, that it is within the range of a master's authority, after having shipped his cargo home,

to speculate upon it at any port he may enter on the passage, and that the underwriters shall pay all the expenses of such speculation, in the way of duties, commissions, services, &c., and take upon themselves thereby the fluctuations of the market. On this principle, he might have exchanged the coffee for molasses, and that for lumber, and gone to every port this side of Cape Horn, to trade and speculate for the underwriters.

The following authorities were then cited: Suydam v. Insurance Co., 2 Johns. 143; 2 Phil. Ins. (2d Ed.) pp. 216–220, 222.

The captain having chartered the vessel to bring the cargo to the United States, had no authority to sell it at Rio Janeiro; and although this fact may not affect the rights of the assured, nevertheless, he cannot, by his own unauthorized and unwarranted act, entitle himself to the compensation, to which, under other circumstances, he would have been entitled. His charges of commissions, expenses, &c., arising from this sale at Rio, are, on that account objected to. The charges of his passage and time (the latter especially) are objectionable. By the terms of his contract with the owners, he was bound to give his time to the transportation of the cargo, and his lay is payment for the time included in making passages. There is no reason, therefore, why he should, because of the total loss, receive pay for his services beyond that which was contemplated by his share or lay. The premium paid by the owners, for a re-insurance of property, which they now say belonged to the defendants, by force of the abandonment, would seem not only to be unjust, but unreasonable.

Messrs. Choate and Crowninshield, for plaintiff, argued as follows:

In this case a verdict was rendered in favor of the plaintiff for a round sum, and liberty was given to the defendants to have the amount made up by an auditor. The loss has been made up by Messrs. Hales & Welbasky, insurance brokers in the city of Boston, which statement the parties take as a basis on which to present certain objections to the court, instead of an auditor's report. The defendants' counsel have filed certain objections or exceptions to the "statement" thus made up, which objections we will shortly consider.

1. It is not true, in fact, as stated in the beginning of the defendants' statement of objections, that the master shipped the oil for New York. By turning to the first bill of lading, annexed to the master's deposition (B. B. Hempstead's), it will be seen that the oil was shipped for New London, "with privilege to discharge at Rio Janeiro." The true statement of the matter is this. Owing to damage, which the ship had sustained by perils of the seas, as the jury have now found, the ship was condemned and sold at

the Bay of Islands. The whaling voyage, not then completed, was broken up. The master waited a period of about four months, taking care of and preserving the property, and then shipped the cargo home by the first opportunity; and as the ship must, on her voyage to the United States, pass directly by Rio Janeiro; and as that is usually a good market for oil, he, in pursuance of a right reserved in his bill of lading, stopped there and sold his oil, and invested the proceeds in coffee, and together with the whalebone, brought it to New York, where it was sold.

The defendants' counsel raise two principal objections, which we will consider in the following order: 1st. That the master had no right to sell his oil at Rio and invest the proceeds in coffee, on the underwriters' account. 2d. They object to compensating the master for his time and services, spent and rendered in preserving the property saved, and in shipping and selling such portion thereof as was shipped and sold under his direction and responsibility; for expenses incurred by him while in that service; for board at the Bay of Islands, Rio, &c., and for his passages.

As to the first objection, it will be remembered, that the owner promptly abandoned the property assured to the underwriter, the voyage having been broken up, so that the master was the agent of the underwriter, from the time of the loss; and all the acts done by him in regard to the shipping the cargo, the salvage of the ship, &c., were for account, not of the owner, but of the underwriter. There is no proof or suggestion, that the master has not acted with the most perfect good faith, or that the course pursued was not perfectly prudent and proper under the circumstances. He had no orders or directions from the plaintiff how to act, but in a case of loss, he acted upon his own judgment for the best interests of all concerned. He considered that as the best mode of remitting the property. The citations from 2 Johns. and 2 Phil. Ins. are entirely inapplicable. Those cases refer to an adjustment of a partial loss, where there was no abandonment. The case of Insurance Co. v. Catlett, 4 Wend. 75, 1 Wend. 561, 1 Paine, 619 (see 2 Phil. Ins., New Ed., p. 343), is like the present, and seems decisive. See, also, 2 Phil. Ins. (2d Ed.) p. 439 et seq.

2d. As to the master's compensation. When the ship was condemned and sold, the mates and crew might lawfully leave her and go about their business; but the master was bound to remain and take care of the property for the benefit of whomsoever it might concern. Now here no objection is made as to the amount charged by the master for his expenses and services, that the price is unreasonable, but that he has no such claim. If the law devolves the duty on the master, it will see him compensated. If he became the agent of the underwriter, then the underwriter must pay him for his services as

agent. The defendants contend, that for waiting for the space of four months at the Bay of Islands, for his responsibility in shipping the cargo, selling the vessel, and for his accompanying the cargo to Rio, and his responsibility and services in selling the oil and buying coffee, he is not to be paid! They speak of his "unauthorized and unwarranted act," in selling oil at Rio. But is there any proof that the master did not act bonâ fide? They contend, that his lay as master compensates him. We submit, that his lay compensates him for his duty on the whaling voyage to the same extent, that it does the crew, but no further; and that, from the time of the loss, he assumes a new duty, and is entitled to a new compensation. He is no longer acting for his own advantage. Indeed, the usage to compensate a master under such circumstances, has been too well settled to be now questioned. For his mere passage home, there may be a question whether the underwriters be liable; but we submit, that this is not that case. He went in the same ship as that in which the cargo was shipped; it was in his charge, and he was to decide at Rio whether to sell there or not. He was in the service of the underwriters and acting for them, and they should pay his expenses. He might very likely have procured employment, or another voyage, at the Bay of Islands, but he was not at liberty to seek it. The freight of the oil, merchants' commissions, duties, and general charges and expenses at Rio, are a proper charge on the coffee purchased and oil sold, just as much as the same charges at home would be. It was the property of the underwriters, not ours. The salvage came to our hands charged with these expenses; we had no power to resist them. We account only for what we receive. If the underwriters are dissatisfied with the charges, they must look elsewhere for redress. The master first deducts his charges; we cannot prevent it. So does the commission merchant.

In the next place, as to Mr. Lawrence's commission. He went to New York by the consent and authority of the defendants, and took charge of the cargo on its arrival there, and attended to the sale of it; of course, he is entitled to the usual commission. This objection, however, does not seem to be insisted on.

There is one charge, however, about which we think that the objection is perhaps well taken. When Mr. Lawrence heard of the loss, finding there was to be a dispute, ex majori cautelâ, he insured the salvage home, "for whom it might concern," and he charges that premium. Now, as the salvage was by the abandonment, at the risk of the defendants, perhaps he had no right to charge them with a premium of insurance on that.

STORY, Circuit Justice. In the present case, the abandonment having been made in due season for a total loss by the perils of the seas, and a verdict having been found in favor of the plaintiff for a total loss, it is clear, that from the time to which the abandonment relates, that is, from the time of the condemnation and sale of the Boston, the master became, and was the agent of the underwriters. It follows, that all his acts, whether rightful or wrongful, in the shipment and sale of the oil, and in the investment of the proceeds, in coffee, are to be treated as acts of the agent of the underwriters and not of the assured, and that the underwriters are solely responsible therefor. Still, however, as, in the present case, it is thought desirable by all the parties to have the questions raised finally disposed of, in order to prevent future litigation or controversy, I have no objection to state my own view of them. In the first place, I deem it perfectly clear, that Capt. Hempstead's necessary expenses at the Bay of Islands, in taking care of the property insured while there, and until the shipment of the oil in the Henry Tuke, together with a reasonable compensation for his services, are to be a charge upon the underwriters. If his accompanying the shipment of the oil was a reasonable and prudent act for the benefit of the underwriters, and if the oil had been carried to New York, I have no doubt, that his passage to New York in the Henry Tuke ought also to be a charge upon the underwriters. The difficulty, that arises, is from the sale of the oil at Rio Janeiro, and the investment of the proceeds in coffee there. If that sale was a highly reasonable and prudent act, such as the master ought, in pursuance of his duty, to have adopted for the benefit of his principals (the underwriters), then his passages to Rio and from thence to New York, in the Henry Tuke, ought also to be a charge upon the underwriters, as well as his expenses at Rio Janeiro, and also a reasonable commission for his services in the sale and investment of the proceeds in the coffee. Now, certainly, a master of a ship, in a case circumstanced like the present, has not a right, as a matter of course, to dispose of the property confided to his care, and to invest the proceeds thereof in other goods upon speculation. There must be either a necessity for the sale, or, at least, it must, with reference to the voyage and the nature of the property, be in a very high degree expedient; otherwise it will be treated as a tortious conversion. If, on the other hand, the master does make a sale, without such necessity or high expediency, and it turns out to be advantageous to the parties interested, and they adopt the acts of the master, and receive the property without reserve or objection, that will amount to a ratification, and they must then take the property or its proceeds cum onere. If, on the other hand, they receive the property, or its proceeds, reserving all their rights, and waiving no objections, then they are entitled to receive the proceeds, without any charges upon them, if the proceeds do not yield a profit to them beyond the fair value of the property shipped,

and so improperly converted, as it would have been on its arrival at the original port of destination. But if a profit ultra such value has come to the hands of the underwriters, by reason of the new investment, then I think that if the master has acted without fraud, and under a mere mistake of judgment, he ought to be entitled, out of those profits, to receive his reasonable expenses, and also a reasonable compensation for his services, not exceeding those profits. Now, there is nothing in the facts and circumstances presented by the report in the present case to enable me to pass any judgment upon these matters. They must, if they furnish grounds for controversy between the parties, be specially ascertained by the auditors, and with their judgment thereon be reported to the court.

These remarks, I believe, are sufficient to furnish an answer to all the objections and suggestions made at the argument, except those which respect Mr. Lawrence's commissions, and his claim for the premium upon the new policy on the oil from the Bay of Islands. The latter claim is surrendered by his counsel, and is clearly unmaintainable. The former is silently abandoned by the counsel for the defendants; and, indeed, as the sale was made by Mr. Lawrence, with the consent of the underwriters, it is clearly a charge which ought to be borne by them.